**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JEMMIE L. WELCH, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:  16-0509 (RC) |
| | : | |
| v. | : | Re Document No.:  3 |
| | : | |
| JOSEPH POWELL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**I.  INTRODUCTION**

Two years ago, Jemmie Welch brought a suit before Judge Chutkan in this District against his employers raising a myriad of common-law tort and contract claims in addition to a claim under the Rehabilitation Act, after his employers allegedly deprived him of a scheduled break. That court dismissed his common-law claims because they were preempted by the Rehabilitation Act. Now, with slightly different facts, he makes the exact same common-law claims, recited in a virtually-verbatim complaint. Mr. Welch also alleges that he was legally entitled to a break as an accommodation for his condition as a diabetic, and that the deprivation by his employer—the Smithsonian's Office of Protection Services—was a violation of § 501 of the Federal Rehabilitation Act of 1973. Mr. Welch further claims that his supervisor unlawfully retaliated against him when he reported his first-line supervisor to his Unit Supervisor for failing to accommodate Mr. Welch's condition. After withdrawing the bulk of their Motion to Dismiss, in effect agreeing with Plaintiff that the Court has subject-matter jurisdiction, Defendants' sole remaining arguments for dismissal concern Mr. Welch's common-law tort and contract claims.

Defendants specifically argue that those claims are preempted by the Rehabilitation Act, and that, in the alternative, the tort claims have not been exhausted as required under the Federal Tort Claims Act. After a *sua sponte* determination that the Court has subject-matter jurisdiction over the case, the Court concludes that Mr. Welch's common-law claims are indeed preempted by the Rehabilitation Act because they arise out of the same nucleus of facts. Accordingly, the Court dismisses all the tort and contract claims in the Complaint.[1]

## II.  FACTUAL BACKGROUND

Plaintiff Jemmie L. Welch began working at the Smithsonian's Office of Protection Services (OPS) in October 2008. Compl., at 3, ECF No. 1. In February 2010, Mr. Welch was diagnosed with diabetes. *See id.* The Smithsonian's Office of Equal Employment and Minority Affairs granted Mr. Welch accommodations in the form of regular breaks to monitor and control his diabetes. *See id.* at 6–7. Mr. Welch alleges that on March 9, 2015, Sergeant Joseph Powell, Mr. Welch's first-line supervisor, did not provide Mr. Welch his scheduled 2:00 p.m. break until 2:45 p.m. *See id.* at 4. During the 45 minutes Mr. Welch was forced to wait to address his health condition, he urinated himself. *See id.* Mr. Welch later contacted Sgt. Powell for an explanation. *See id.* Sgt. Powell told him that he had simply forgotten to relieve him of his post so that he could take a break. *See id.* Mr. Welch then filed a complaint with Sergeant Carlos Davila, Mr. Welch's Unit Supervisor, who contacted Carol Gover, the Affirmative Employment Program Manager at the Smithsonian's Office of Equal Employment and Minority Affairs.[2] *See id.* at 5.

---

[1] Because Mr. Welch does not enumerate individual counts in his Complaint, the Court will refer to all those claims not claiming relief under the Rehabilitation Act simply as Mr. Welch's tort and contract claims.

[2] The Court notes that the Complaint alleges conflicting dates (March 9, 10, and 12) for when Welch contacted Ms. Gover about the March 9 incident. Additionally, the Complaint is

Mr. Welch claims that Sgt. Powell retaliated against him for contacting his supervisor and Ms. Gover to file an Equal Employment Opportunity ("EEO") complaint. *See id.* Mr. Welch alleges that Sgt. Powell's retaliatory conduct consisted of unfairly singling him out on two separate occasions. First, Mr. Welch claims that, in front of other officers, Sgt. Powell requested for Mr. Welch to e-mail him after each of his breaks to confirm that he had received the requested breaks. *See id.* at 6. Second, Mr. Welch claims that Sgt. Powell unfairly blamed him for a door being left open near Mr. Welch's post while he was actually filling in for an officer on a different post who needed an emergency bathroom break. *See id.* at 7–8. As a result of these incidents, Mr. Welch contacted an EEO counselor to begin informal counseling about the incidents. *See* Defs.' Mem. P. & A. Supp. Defs.' Mot. to Dismiss ("Defs.' Mot. to Dismiss"), at 3, ECF No. 3. Mr. Welch filed a formal EEO complaint on May 6, 2015, and an amended complaint on May 16, 2015. Mem. P. & A. Supp. Pl.'s Resp. Defs.' Mot. for Summ. J. ("Pl.'s Resp."), at 3, ECF No. 7. Defendants concede that Mr. Welch "followed proper procedures" up to the time he filed the Complaint with the Court. *See* Defs.' Mot. to Dismiss, at 5. On March 15, 2016, Mr. Welch brought this suit against Powell, Anita Montgomery, Jeann O'Toole in both her individual and official capacities (Director of the OPS), and the Smithsonian Institution (collectively, the "Defendants"). *See generally* Defs.' Mot. to Dismiss.

### III. PROCEDURAL BACKGROUND

When Mr. Welch brought this suit, he also had a complaint pending before the Equal Employment Opportunity Commission (EEOC) stemming from the same incidents at issue in

---

unclear about who Mr. Welch contacted to complain about Sgt. Powell not allowing Mr. Welch to take his breaks. These discrepancies have no bearing on the outcome.

this case. *See* Defs.' Mot. to Dismiss, at 3–4. The Complaint includes an allegation against the Defendants under Section 501 of the Rehabilitation Act, 29 U.S.C. § 791, and common-law tort and contract claims for "breach of Reasonable Accommodations, . . . tort[i]ous interference with written and agreed upon accommodation, for intentional infliction of emotional distress, [and] for negligent infliction of emotional distress." Compl., at 1–2.

Defendants originally moved to dismiss for lack of subject-matter jurisdiction based on an alleged failure to exhaust administrative remedies and for failure to state a claim on preemption grounds, but have since withdrawn their Motion to Dismiss for lack of subject-matter jurisdiction. *See generally* Defs.' Mot. to Dismiss; *see* Notice of Dismissal of Pl.'s Pending EEOC Compl. ("Notice of Dismissal"), ECF No. 10. Defendants' jurisdictional argument was that Mr. Welch failed to exhaust his administrative remedies as required under § 501 of the Rehabilitation Act. *See* Defs.' Mot. to Dismiss, at 5–6. Defendants still argue that Mr. Welch's tort and contract claims should be dismissed on preemption grounds because those claims stem from the same nucleus of facts as the Rehabilitation Act claim, and the Rehabilitation Act is the exclusive remedy for federal employees alleging disability discrimination. *See id.* at 6–7. In the alternative, should the Rehabilitation Act not preempt the tort and contract claims, Defendants argue that the tort claims should be dismissed because the Federal Tort Claims Act requires exhaustion of administrative remedies prior to filing suit. *Id.*

After Defendants filed their Motion to Dismiss, Mr. Welch filed a Notice of Voluntary Dismissal Without Prejudice with the EEOC. *See* Notice of Dismissal. The EEOC dismissed the complaint pursuant to 29 C.F.R. §§ 1614.109(b) and 1614.107(a)(3). *See id.*; Notice of Dismissal Ex. A, at 1, ECF No. 10-1. Defendants now limit their Motion to Dismiss to Mr. Welch's failure to state a claim upon which relief can be granted. *See* Notice of Dismissal. The Court now grants

4

Defendants' Motion in part, dismissing all claims except those alleging violations of the Rehabilitation Act.³

### IV.  ANALYSIS

After withdrawing their arguments concerning failure to exhaust under the Rehabilitation Act, Defendants seek dismissal on two remaining grounds. First, Defendants argue that Mr. Welch's tort and contract claims are preempted by his Rehabilitation Act claims because they stem from the same set of events and the Rehabilitation Act "is the exclusive remedy for federal employees alleging disability discrimination." *See* Defs.' Mot. to Dismiss, at 6 (quoting *Welsh v. Hagler*, 83 F. Supp. 3d 212, 222 (D.D.C. 2015)). Second, Defendants argue that the common-law tort claims should be dismissed because Mr. Welch has failed to exhaust administrative remedies as required under the Federal Tort Claims Act. *See id.* at 7. Because the Court dismisses all of Mr. Welch's common-law tort and contract claims under the first argument, it need not address the second. But before addressing Defendants' remaining arguments, the Court will address the issue of subject-matter jurisdiction.

---

³ Moreover, because Rehabilitation Act claims may only be brought against the heads of agencies in their official capacities, the Court will dismiss the claims against all the named defendants and substitute David J. Skorton, in his official capacity as Secretary of the Smithsonian Institution, as the sole defendant in this case. *See Di Lella v. Univ. of D.C. David A. Clarke Sch. of Law*, 570 F. Supp. 2d 1, 7 n.8 (D.D.C. 2008) ("[T]here is no individual liability under the ADA or the Rehabilitation Act."); *Richardson v. Yellen*, 167 F. Supp. 3d 105, 118 (D.D.C. 2016) ("[O]nly the heads of federal agencies in their official capacity may be sued, not their individual employees."); *see also Welsh v. Hagler*, 83 F. Supp. 3d 212, 216 n.2 (D.D.C. 2015) (noting that Defendant Jemmie Welch "should have named the Secretary of the Smithsonian Institution as the sole defendant, not the Smithsonian and two of its employees").

### A. Subject-Matter Jurisdiction

Following the dismissal of Mr. Welch's complaint pending before the EEOC, Defendants limited their Motion to Dismiss to their argument that Mr. Welch fails to state a claim upon which relief can be granted. *See* Notice of Dismissal. But because it is imperative for the Court to ensure that it has subject matter jurisdiction at all times and over all claims, *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008), the Court will *sua sponte* address the issue of subject matter jurisdiction. Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). Federal courts "possess only that power authorized by [the] Constitution and statute . . . ." *Kokkonen*, 511 U.S. at 377. Congress has the "prerogative to restrict the subject-matter jurisdiction of federal district courts." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 n.11 (2006). Because subject-matter jurisdiction concerns the Court's ability to adjudicate the case before it, the issue may be raised *sua sponte*. *NetworkIP, LLC*, 548 F.3d at 120. "Indeed, we *must* raise it, because . . . we are forbidden—as a court of limited jurisdiction—from acting beyond our authority." *Id.* When considering whether it has jurisdiction, a court must accept the well-pleaded factual allegations of the complaint as true. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Congress has precluded federal jurisdiction over Rehabilitation Act claims prior to the exhaustion of administrative remedies. *See Doak v. Johnson*, 798 F.3d 1096, 1099 (D.C. Cir. 2015); *Barkley v. U.S. Marshals Serv.*, 766 F.3d 25, 33 (D.C. Cir. 2014); *see also* 29 U.S.C.

§ 794(a)(1). A plaintiff's failure to exhaust administrative remedies—either by not filing a complaint with the agency or not receiving a final action on a complaint—prohibits a district court from hearing that party's claim for lack of subject matter jurisdiction. *See Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006); *see also Doak*, 798 F.3d at 1103–04. Under the Rehabilitation Act, a plaintiff has not exhausted administrative remedies if he made a "wholesale failure to file an administrative complaint or to obtain any administrative decision at all." *Doak*, 798 F.3d at 1103. There is a limited statutory exception to the exhaustion of remedies requirement: once an employee has filed his complaint with the agency or department and 180 days have passed since that filing, an employee may file a suit in district court if the employee is "*aggrieved* by . . . the failure to take final action on his complaint." 42 U.S.C. § 2000e-16(c) (emphasis added); *see* Rehabilitation Act, 29 U.S.C. § 794a(a)(1) (making remedies outlined in § 2000e-16 available to federal employees who allege Rehabilitation Act violations); *Doak*, 798 F.3d at 1100. If he is so aggrieved, "at the end of the 180 day period the employee is entitled to sue, regardless of the pendency of EEOC proceedings." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984); *accord Augustus v. Locke*, 699 F. Supp. 2d 65, 72 (D.D.C. 2010); *see also Ramsey v. Moniz*, 75 F. Supp. 3d 29 (D.D.C. 2014) (finding subject-matter jurisdiction despite the plaintiff's failure to withdraw his administrative complaint until after filing his district court complaint).

The Court raises subject-matter jurisdiction *sua sponte* because another court in this District recently referenced a district split on the question of whether an employee is "aggrieved" when he voluntarily withdraws his administrative complaint at least 180 days after filing it. *See Ramsey v. Moniz*, 75 F. Supp. 3d at 43–44 (collecting cases). The Court concludes that a party can still be "aggrieved" after voluntarily withdrawing an administrative complaint when 180

7

days have passed since the party filed the complaint with the agency, so long as that party acted in good-faith with the administrative process.

In *Ramsey*, the court considered whether an employee who filed a discrimination action against the Department of Energy had exhausted her administrative remedies under the Rehabilitation Act. *Id.* at 34. That employee, like Mr. Welch, participated in the administrative process and requested an administrative hearing after the completion of the investigation resulting from her complaint. *See id.* at 39. Following several discovery requests and stays as a part of her administrative hearing, the party voluntarily withdrew from the administrative proceeding to pursue her claims in federal court. *See id.* The *Ramsey* court suggested that there was disagreement in this district over whether a person who voluntarily withdrew his complaint had exhausted administrative remedies as required under the Rehabilitation Act. *See id.* at 42–44. That court found that *McRae v. Librarian of Congress*, 843 F.2d 1494 (D.C. Cir. 1988) (per curiam), which held that a "good[-]faith refusal to pursue [an administrative] hearing" should not bar a plaintiff from pursuing action in the federal courts, *McRae*, 843 F.2d at 1496, was controlling precedent in that case. *Ramsey*, 75 F. Supp. 3d at 45–46. The *Ramsey* court applied *McRae*'s "good-faith" reasoning to the case before it and found that when a plaintiff cooperates with administrative procedures for more than 180 days, voluntary withdrawal from administrative proceedings does not bar a person from filing suit in federal court because of a failure to exhaust administrative remedies. *See id.* at 46.

The Court agrees with the *Ramsey* court's holding—that a person who has cooperated with the administrative process in good-faith for more than 180 days after that person filed his complaint is not precluded from bringing a suit in federal court—for three reasons. First, in addition to *McCrae*, there is other D.C. Circuit precedent on point suggesting that a voluntary

8

withdrawal from the administrative process, without more, does not bar a plaintiff from judicial remedies. In *Wilson v. Pena*, the court found that the "exhaustion requirement is a practical and pragmatic [requirement] and should not be invoked when it serves no practical purpose." 79 F.3d 154, 165 (D.C. Cir. 1996) (internal quotations omitted) (quoting *Brown v. Marsh*, 777 F.2d 8, 14, 16–17 (D.C. Cir. 1985)). The court went on to hold that the doctrine serves no practical or pragmatic purpose unless that failure prevents the agency from acting on the merits of the complaint. *See id.* Taken together, *McRae* and *Wilson* establish that a plaintiff is not barred from filing a Rehabilitation Act claim in federal court for failure to exhaust if he acts in good faith during the 180 days after filing his administrative complaint and does not prevent the agency from making a decision on the merits of the complaint.

Second, other courts in this District have rejected the only case suggesting that voluntary dismissal precludes judicial review.[4] In *Wiley v. Johnson*, the court reasoned that an EPA employee failed to exhaust administrative remedies because he voluntarily withdrew from the administrative process, even though his complaint had been pending for more than a year and the employee had complied with the administrative process. *See* 436 F. Supp. 2d 91, 93–95 (D.D.C. 2006). Five years later in *Payne v. Locke*, a D.C. District Court reasoned that the *Wiley* court

---

[4] The *Ramsey* court cited *Smith v. Koplan*, 362 F. Supp. 2d 266 (D.D.C. 2005), as another example of where this district held that a voluntary withdrawal precluded a plaintiff from filing a claim in federal court for failure to exhaust administrative remedies. *Ramsey*, 75 F. Supp. 3d at 44. That case does not apply to the facts here. In *Smith*, the plaintiff "abandoned" the administrative proceedings more than a year after filing her administrative complaint and then filed suit in federal court. *See* 362 F. Supp. 2d at 268. In this case, Welch voluntarily withdrew from the proceedings after filing suit in federal court. *See* Notice of Dismissal Ex. A. The regulations that govern these proceedings treat the two situations differently. *Compare* 29 C.F.R. § 1614.108(a)(3), *with* § 1614.108(a)(7). Additionally, in *Smith*, the court's decision relied in part on the fact that the plaintiff had failed to respond to discovery requests preventing the agency from making a decision on the merits. *See* 362 F. Supp. 2d at 267. That analysis is consistent with both *Wilson* and this court's decision.

9

failed to consider the plain language of the relevant statute and regulations, and accordingly reached the wrong result. *See* 766 F. Supp. 2d 245, 251 (D.D.C. 2011); *see also* 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407. Rather than follow *Wiley*, the *Payne* court held that a complainant could file suit in federal court even after voluntarily withdrawing from administrative proceedings. *Payne*, 766 F. Supp. 2d at 251. Now, this opinion is yet another on a growing list of decisions that have declined to follow *Wiley*. *See Ramsey*, 75 F. Supp. 3d at 44–45; *Payne*, 766 F. Supp. 2d at 251; *Augustus v. Locke*, 699 F. Supp. 2d 65, 70–72 (D.D.C. 2010); *Laudadio v. Johanns*, 677 F. Supp. 2d 590, 600–02 (E.D.N.Y 2010).

Third, holding that a good-faith voluntary withdrawal from administrative proceedings precludes judicial review could leave parties to indefinitely-delayed administrative proceedings without recourse. This would fly in the face of the notion that prompt access to courts in cases of discrimination "is so important that the administrative process will be given only a finite time to deal alone with a given dispute." *See Wilson*, 79 F.3d at 167 (quoting *Grubbs v. Butz*, 514 F.2d 1323, 1328 (D.C. Cir. 1975) (quoting *Hackley v. Johnson*, 360 F. Supp. 1247, 1251 (D.D.C. 1973))).

Mr. Welch waited 314 days to file suit with the Court after filing his initial charge. He has also fully complied with the administrative procedures. *See generally* Pl.'s Resp. There is no indication that he acted in bad-faith during the immediate 180 days after filing his complaint, nor that he prevented the agency from making a decision on the merits. Thus, regardless of the status of his administrative complaint, he was aggrieved by the agency's failure to take final action on his complaint when he filed the Complaint in this case. Accordingly, Plaintiff has sufficiently exhausted his administrative remedies as required under the Rehabilitation Act, and the Court has subject-matter jurisdiction.

### B. Failure to State a Claim Upon Which Relief May be Granted

Defendant moves to dismiss on the grounds that Plaintiff's common-law tort and contract claims are preempted by the Rehabilitation Act's remedies, citing *Welsh v. Hagler*, 83 F. Supp. 3d 212 (D.D.C. 2015).[5] "[T]he Rehabilitation Act is the exclusive remedy for federal employees alleging disability discrimination." *Welsh*, 83 F. Supp. 3d at 222 (citing *Paegle v. Dep't of Interior*, 813 F. Supp. 61, 66 (D.D.C. 1993) ("We agree that when a federal employee seeks to redress rights guaranteed by the Rehabilitation Act, that Act preempts other actions to redress the same discrimination.")); *see Shirey v. Devine*, 670 F.2d 1188, 1191 n.7 (D.C. Cir. 1982) (noting that the incorporation of 42 U.S.C. § 2000e-16 "into the Rehabilitation Act provides a strong argument that statutory remedies" are the exclusive remedies available for disability discrimination of federal employees); *cf. Brown v. GSA*, 425 U.S. 820, 835 (1976) (holding that § 717 of the Civil Rights Act of 1964, which includes 42 U.S.C. § 2000e-16, "provides the exclusive judicial remedy for claims of discrimination in federal employment"). Parties cannot simply "rename Rehabilitation Act claims as tort claims." *Welsh*, 83 F. Supp. 3d at 222. To determine whether claims are preempted by the Rehabilitation Act, courts must determine whether the party is "seek[ing] to redress the violation of rights guaranteed by the[se] statute[s]." *Davis v. Passman*, 442 U.S. 228, 247 n.26 (1979). In *Welsh*, the very same plaintiff as the case at bar filed an Americans with Disabilities Act claim—which the court construed as a Rehabilitation Act claim—against his employer for failure to accommodate his condition as a diabetic. *See* 83 F. Supp. 3d at 216–17. He also made "a variety of other common law claims,

---

[5] As Defendants note, the plaintiff in *Welsh* was Mr. Jemmie Welch, the plaintiff here. The caption of the 2014 case incorrectly spells his last name "Welsh," but the rest of the opinion correctly refers to him as Jemmie Welch. *See Welsh*, 83 F. Supp. at 215 ("The caption in this case lists Plaintiff's last name as 'Welsh,' but it appears based on the briefing that his last name is actually 'Welch.'").

although they all ar[o]se out of [the d]efendants' alleged interference with his reasonable accommodation." *See id.* at 216. The court dismissed his common-law claims because they all arose from the same factual allegations—"that the [d]efendants denied Welch his reasonable accommodation." *See id.* at 222.

In this case, as in the last, Mr. Welch also makes a variety of common-law tort and contract claims. But the parallels between the cases go far beyond mere similarities. The Complaint that Mr. Welch filed in the case at bar contains a section where he states all the legal bases for his claims, including a plethora of accusations against Defendants peppered with tort and contract vocabulary. *See* Compl., at 10. With the exception of some name changes and verb conjugations, Mr. Welch's 2014 complaint is word-for-word identical. *Compare* Compl. *with* Complaint at 4–5, *Welsh v. Hagler*, 83 F. Supp. 3d 212 (2014) (No. 14-0153), ECF No. 1. To use the most identifiable legal claims as examples, Mr. Welch claimed in both cases that "Defendants' tort[i]ous actions toward Plaintiff were intentional and caused severe emotional distress," "Defendants' failure to comply with terms and conditions of its obligations under the accommodation . . . constituted a breach of the terms of this accommodation," "Defendants' actions caused [him] to suffer mental and emotional distress," and "[a] contractual relationship existed between Plaintiff and Defendant" that was breached. *See* Compl., at 10; Complaint at 4–5, *Welsh v. Hagler*, 83 F. Supp. 3d 212 (2014) (No. 14-0153), ECF No. 1. The uniting theme of this myriad of common-law claims is Defendants' alleged failure to accommodate his condition under the Rehabilitation Act. To the extent that there is a succinct claim in tort, it is for "tort[i]ous interference with written and agreed upon accommodation." Compl., at 1. This, like his complaint in the 2014 case, is nothing more than a Rehabilitation Act claim renamed as a tort claim. As for his "contract" claims, as the court noted in his last case, Mr. "Welch also

references a 'contractual relationship' between himself and OPS but does not allege a breach of contract aside from a 'breach of terms of this accommodation' and 'breach of Reasonable Accommodations,' which simply restate his Rehabilitation Act claims." *See Welsh*, 83 F. Supp. 3d at 223 n.7. The Court wholly agrees with this characterization for the literally indistinguishable claims made in this case. Because his common-law claims are nothing more than renamed Rehabilitation Act claims, the Court grants defendants' Motion to Dismiss for all claims except for those that allege violations of the Rehabilitation Act against David J. Skorton, in his official capacity as Secretary of the Smithsonian Institution.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 3) is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: November 17, 2016                                                                RUDOLPH CONTRERAS
                                                                                         United States District Judge