# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JEMMIE L. WELCH, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-0509 (RC) |
| | : | | |
| v. | : | Re Document No.: | 24 |
| | : | | |
| DAVID J. SKORTON, *Secretary,* | : | | |
| *Smithsonian Institution*, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Jemmie L. Welch, an employee of the Smithsonian Institution ("Smithsonian"), brings this action against Defendant David. J. Skorton, the Secretary of the Smithsonian. Mr. Welch alleges that the Smithsonian failed to accommodate his disability, intentionally discriminated against him on the basis of disability, retaliated against him after he filed Equal Employment Opportunity ("EEO") complaints, and subjected him to a hostile work environment, all in violation of the Rehabilitation Act. The Smithsonian moves for summary judgment, asserting that no reasonable jury could find that it refused Mr. Welch's request for an accommodation; that Plaintiff did not suffer any adverse employment action to support his claims of retaliation and disability discrimination; that the Smithsonian had legitimate, non-discriminatory and non-retaliatory reasons for any alleged action that might be construed as adverse and Mr. Welch has failed to rebut those explanations; and that the conduct Mr. Welch alleges is not sufficiently severe or pervasive to rise to the level of a legally cognizable hostile work environment claim. For the reasons set forth below, the Court grants Defendant's motion.

## II. FACTUAL BACKGROUND

Plaintiff Jemmie L. Welch began working at the Smithsonian Institution's Office of Protection Services in October 2008. Def.'s Statement of Undisputed Material Facts ("Def.'s SUMF") ¶ 1, ECF No. 24; Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Opp'n to MSJ") at 2, ECF No. 25. In February 2010, Mr. Welch was diagnosed with diabetes. Opp'n to MSJ at 2. The Smithsonian's Office of Equal Employment and Minority Affairs granted Mr. Welch accommodations in the form of regular breaks to monitor and control his diabetes. Def.'s SUMF ¶ 5. Specifically, the Smithsonian and Mr. Welch agreed that he would take breaks at 10:00 a.m., 12:00 p.m., and 2:00 p.m., barring an emergency. Decision of Accommodation Request (Dec. 28, 2010), Ex. C, ECF No. 24-1; Email from Carlos Davila to Joseph Powell (Sept. 30, 2015), Ex. D, ECF No. 24-1.

Mr. Welch alleges that on March 9, 2015, Sergeant Joseph Powell, Mr. Welch's first-line supervisor, did not relieve Mr. Welch at 2:00 p.m. so that he could take his scheduled break. Compl. at 4, ECF No. 1. Mr. Welch phoned Sgt. Powell around either 2:30 p.m. or 2:40 p.m. to ask why he had not yet received his scheduled break. Aff. of Jemmie L. Welch ("Welch Aff.") at 3, Ex. A, ECF No. 24-1 (asserting that he called Sgt. Powell "after 2:40 p.m."); Dep. of Joseph A. Powell ("Powell Dep.") 44:18–24, Ex. F, ECF No. 24-1 (asserting that Mr. Welch called at "about 2:30 p.m." to request his last break). Sgt. Powell told Mr. Welch that he had simply forgotten to relieve him of his post, as he had been distracted by other tasks. Welch Aff. at 3; Powell Dep. 45:2–10. Shortly after the phone call, Mr. Powell sent someone to relieve Mr. Welch, and Mr. Welch received his break at approximately 2:45 p.m. Compl. at 4. During the nearly 45 minutes that Mr. Welch was forced to wait to address his health condition, he contends that he urinated himself. Compl. at 4.

The next day, Mr. Welch complained to Carol Gover, the Affirmative Employment Program Manager at the Smithsonian's Office of Equal Employment and Minority Affairs, and to Sergeant Carlos Davila, Mr. Welch's Unit Supervisor. Email from Jemmie Welch to Carol Gover & Carlos Davila (Mar. 10, 2015), Ex. G, ECF No. 24-1. In his message, Mr. Welch contended that Sgt. Powell had failed to timely release him for his breaks on other occasions. *Id.* In response to Mr. Welch's email, Ms. Gover recommended that Mr. Welch contact his supervisor within fifteen minutes of any missed break. Email from Carol Gover to Jemmie Welch (Mar. 10, 2015), Ex. G. In addition, Ms. Gover forwarded Mr. Welch's message to Larry Carpenter, a Security Manager, who promised to "do everything possible to ensure that [O]fficer Welch receives his official breaks on time." Email from Larry Carpenter (Mar. 18, 2015), Ex. G. Mr. Carpenter explained that he had instructed each supervisor to notify him by email each day to confirm that Mr. Welch had received his scheduled breaks. *Id.*; *see also* Email from Larry Carpenter (Mar. 10, 2015), Ex. E.

Mr. Welch claims that Sgt. Powell retaliated against him for contacting his supervisor and Ms. Gover to file an EEO complaint. Compl. at 5. Mr. Welch alleges that Sgt. Powell's retaliatory conduct consisted of unfairly singling him out on two separate occasions. First, Mr. Welch claims that, on March 12, 2015, during a roll call at which five other officers were present, Sgt. Powell informed the other officers that Mr. Welch had filed an EEO complaint against Sgt. Powell. Compl. at 5–6. Sgt. Powell then requested that Mr. Welch to e-mail him after each of his breaks to confirm that he had received the requested breaks. Compl. at 5–6; *see* Powell Dep. 96:24–98:12. Sgt. Powell contends that he was later instructed by his supervisors that it was his responsibility to email to confirm that Mr. Welch had received his scheduled

breaks. Thus, Mr. Welch only emailed to confirm that he received breaks on March 12, 2015. *See* Powell Dep. 98:5–12.

Second, Mr. Welch claims that, on March 23, 2015, Sgt. Powell singled him out for criticism. That day, Mr. Welch was assigned to a post on the loading dock, but he briefly left his post to relieve another officer who needed an emergency bathroom break. Compl. at 7–8. Sgt. Powell called Mr. Welch back to his post on the loading dock and blamed him for a door being left open at the site. Compl. at 8–9. Mr. Welch contends that this criticism was unfair because he did not know that the door on the loading dock had been left ajar because he had stepped away to relieve another officer. Compl. at 8–9.

As a result of these incidents, Mr. Welch filed the present suit in March 2015. *See* Compl. Mr. Welch's complaint alleges that Defendant violated the Rehabilitation Act, 29 U.S.C. § 791, and it also asserts common law tort and contract claims for "breach of Reasonable Accommodations, . . . tort[i]ous interference with written and agreed upon accommodation, for intentional infliction of emotional distress, [and] for negligent infliction of emotional distress." Compl. at 1–2. In an earlier Memorandum Opinion, this Court granted Defendant's motion to dismiss all claims except those alleging violations of the Rehabilitation Act.[1] *See Welch v. Powell*, No. 16–509, 2016 WL 6806211, at *5 (D.D.C. Nov. 17, 2016) (finding Plaintiff's

---

[1] At the motion-to-dismiss stage, Defendant had originally argued that Mr. Welch had failed to exhaust administrative remedies under the Rehabilitation Act. *See* Def.'s Mot. to Dismiss at 5–6, ECF No. 3. Defendant abandoned this argument before the Court took up the motion, *see* Notice of Dismissal of Pl.'s Pending EEOC Compl., ECF No. 10, however, the Court *sua sponte* addressed the question to confirm that it had subject matter jurisdiction over Plaintiff's Rehabilitation Act claims. *Welch v. Powell*, No. 16–509, 2016 WL 6806211, at *3–5. The Court found that Plaintiff had sufficiently exhausted his administrative remedies as required under the Rehabilitation Act, and that the Court has subject matter jurisdiction. *Id.* at *6.

common-law tort and contract claims preempted by the Rehabilitation Act). Defendant now moves for summary judgment on Plaintiff's remaining claims.

### III. LEGAL STANDARDS

#### A. Rehabilitation Act

"The Rehabilitation Act prohibits federal agencies from engaging in employment discrimination against disabled individuals." *Nurridden v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016); *see also Taylor v. Small*, 350 F.3d 1286, 1291 (D.C. Cir. 2003) (explaining the statutory provision of the Act under which an employee of the Smithsonian may assert a violation). When courts evaluate whether the federal government has satisfied its obligations under the Rehabilitation Act, they apply the standards of the Americans with Disabilities Act of 1990 ("ADA"). 42 U.S.C. § 12101; *see also Minter v. District of Columbia*, 809 F.3d 66, 69 (D.C. Cir. 2015) (explaining that the Rehabilitation Act incorporates the standards used to evaluate ADA claims). "[T]he Rehabilitation Act requires federal employers to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'" *Solomon v. Vilsack*, 763 F.3d 1, 5 (D.C. Cir. 2014). The Act also prohibits "retaliation against or coercion of individuals who seek to vindicate the rights guaranteed by the statute." *Id.* (citing 42 U.S.C. §§ 12203(a)–(b)). "[T]he Rehabilitation Act (like the ADA) bars several different types of discrimination: failure to accommodate; intentional discrimination, also known as 'disparate treatment' discrimination; retaliation; disparate impact discrimination; and the creation of a hostile work environment." *Drasek v. Burwell*, 121 F. Supp. 3d 143, 153–54 (D.D.C. 2015) (citations omitted); *see also Floyd v. Lee*, 968 F. Supp. 2d 308, 328 & n.4 (D.D.C. 203) (explaining that "[a]though this circuit has not resolved the question, four circuits have found that hostile work environment claims are available under the ADA").

## B. Summary Judgment

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). A court may grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007). The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence[,]" *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## IV. ANALYSIS

Mr. Welch asserts four claims under the Rehabilitation Act. Specifically, he alleges that (1) Defendant failed to accommodate his disability; (2) Defendant intentionally discriminated against him because of his disability; (3) Defendant retaliated against him for filing EEO

complaints; and (4) Defendant subjected him to a hostile work environment. *See* Compl. at 5–10. Defendant argues that it is entitled to summary judgment on each claim. Specifically, Defendant contends that Mr. Welch's failure-to-accommodate claim fails because he cannot show that the Smithsonian refused to accommodate him; that Mr. Welch's intentional discrimination and retaliation claims fail because Mr. Welch has not shown that he was subjected to any adverse actions; that the Smithsonian has offered legitimate, non-discriminatory and non-retaliatory explanations for any purportedly adverse actions; and that Mr. Welch's hostile work environment claim does not assert allegations that are sufficiently severe or pervasive to entitle him to relief. Def.'s Mot. Summ. J. ("Def.'s MSJ") at 10–14, ECF No. 24. For the reasons explained below, the Court grants Defendant's motion.

### A. Failure to Accommodate

Mr. Welch first contends that the Smithsonian violated the Rehabilitation Act by failing to accommodate his disability. *See* Compl. at 4. Defendant argues that it is entitled to summary judgment because the undisputed material facts show that the Smithsonian did not refuse to accommodate Mr. Welch. Def.'s MSJ at 9–10. The Court agrees and grants summary judgment for Defendant.

To prevail on a failure-to-accommodate claim under the Rehabilitation Act, a plaintiff must produce sufficient evidence (1) that he was disabled, (2) that his federal employer had notice of his disability, and (3) that the employer denied his request for a reasonable accommodation of his disability. *Chenari v. George Washington Univ.*, 847 F.3d 740, 746–47 (D.C. Cir. 2017). Defendant does not dispute that the first two requirements are met—Mr. Welch was disabled and the Smithsonian had notice of Mr. Welch's disability. Defendant contends, however, that Mr.

Welch cannot produce sufficient evidence to meet the third element because no reasonable jury could find that the Smithsonian denied Mr. Welch's request for a reasonable accommodation.

Ordinarily, a failure-to-accommodate case involves an employer's purported refusal to participate in good faith in the interactive process of developing a plan to enable an employee to continue working despite his disability. *See, e.g.*, *Ward v. McDonald*, 762 F.3d 24, 31–32 (D.C. Cir. 2014) (explaining the standard for evaluating such a claim). Mr. Welch's claim, however, is different. Mr. Welch does not dispute that he requested an accommodation in the form of periodic breaks to tend to his health condition and that the Smithsonian granted the request, approving a schedule that would afford him daily breaks in the mid-morning, at lunchtime, and in the afternoon. *See* Decision on Accommodation Request (Dec. 28, 2010), Ex. C. Likewise, Mr. Welch does not argue that the schedule that the parties developed did not reasonably accommodate his disability. Rather, Mr. Welch contends that the Smithsonian denied him an accommodation on March 9, 2015 when it was about forty-five minutes late in providing Mr. Welch's scheduled break. The Court agrees with the Smithsonian that no reasonable jury could find that Defendant's provision of a delayed break on one occasion, or even a handful of sporadic occasions before he complained, constituted a denial of an accommodation under the Rehabilitation Act.

First, to be sure, the Court agrees with Mr. Welch's general assertion that an employer does not meet its obligations under the Rehabilitation Act by agreeing to accommodate an employee in theory and then failing to do so in practice. *Cf. Norden v. Samper*, 503 F. Supp. 2d 130, 156 (D.D.C. 2007) (finding that an employer did not accommodate an employee's disability by affording "a sham proposal (a 'flexible' schedule that was actually inflexible)"). Another district court in this jurisdiction explored this issue at length in *Green v. American Univ.*, 647 F. Supp. 2d 21 (D.D.C. 2009). In that case, a university had verbally instructed a driver who had been hired

to transport the university president that the driver could take bathroom breaks to tend to his disability. *Id.* at 25–26. However, during a trip, the university president was "adamant about continuing" when the driver requested a bathroom break and "turned blue and pink in the face and mumbled some words" when the employee proceeded to a rest stop to use the bathroom. *Id.* at 26. Shortly after that trip, the university terminated the driver, citing performance issues without identifying the request for a bathroom stop as a basis for his termination. *Id.* The district court concluded that, based on "the totality of the circumstances," a reasonable jury could infer that the employer had refused to accommodate the employee." *Id.* at 36–37. Specifically, the combination of the university president's "known preference for zero stops during car trips and his negative reaction to the plaintiff's request to stop so he could use the bathroom" could have amounted to a denial of the accommodation. *Id.*

The circumstances of this case are different in several respects. First, in *Green*, the plaintiff-employee faced resistance from his employer when he asked for the agreed-upon accommodation. *See id.* Not so here. The moment Mr. Welch informed Sgt. Powell that he had not yet received his scheduled break, Sgt. Powell sent someone to relieve Mr. Welch. Second, unlike in *Green*, there is substantial evidence on record showing efforts to ensure that Mr. Welch's supervisors adhered to his accommodation plan going forward. For example, Carol Gover "thank[ed]" Mr. Welch for notifying her of "the supervisor's oversight" regarding the provision of breaks and "recommend[ed] that [Mr. Welch] contact the appropriate supervisor within 15 minutes of a missed break if an oversight occurs in the future." Email from Carol Gover to Jemmie Welch at 1, Ex. G. Likewise, Lieutenant Arnold Moss instructed Mr. Welch to contact a supervisor if he did not receive his break within three to five minutes of the scheduled time. Email from Arnold Moss to Jemmie Welch, Ex. E. And Security Manager Larry Carpenter specifically demanded

that Mr. Welch's supervisors "[e]nsure the MPO Jemmie Welch receives his daily breaks at 10:00 am, 12:00pm, and 2:00pm" and requested that the supervisors send "daily e-mail notifications" to confirm that Mr. Welch had received his breaks. Email from Larry Carpenter, Ex. E. Indeed, at the administrative level, Mr. Welch confirmed that after March 9, he had not had occasion to complain of delayed breaks because "[a]fter the March 9th incident, breaks again became regular." Aff. of Jemmie Welch, Ex. A at 3, ECF No. 24-1. Under these circumstances, no reasonable jury could conclude that the Smithsonian denied Mr. Welch a reasonable accommodation. Accordingly, the Court grants Defendant's request for summary judgment with respect to this claim.

### B. Disability Discrimination

Mr. Welch next argues that the Smithsonian engaged in disability discrimination under the Rehabilitation Act, apparently by delaying Mr. Welch's scheduled break by forty-five minutes on March 9, 2015, and by requesting that Mr. Welch send an email to confirm that he had received his scheduled break. *See* Compl. at 5–6. Defendant argues that Mr. Welch has suffered no adverse employment action, a required component of a disability discrimination claim. Def.'s MSJ at 10–11. Defendant also contends that it has asserted a legitimate, nondiscriminatory reason for each action and that Mr. Welch has not provided evidence on which a jury might conclude that the offered explanations are pretext. The Court agrees on both counts.

"[T]he two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). "A plaintiff must prove both elements to sustain a discrimination claim." *Id.* Even if a plaintiff has suffered an adverse action, an

employer is still entitled to summary judgment if it "asserts a legitimate, nondiscriminatory reason for [the] adverse employment action," and plaintiff fails to produce "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis." *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008).

Mr. Welch's disability discrimination claim fails for two distinct reasons. First, Mr. Welch has not demonstrated that he suffered any adverse employment action. "An adverse employment action is 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Redmon v. U.S. Capitol Police*, 80 F. Supp. 3d 79, 86 (D.D.C. 2015) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). "If an action is not presumptively adverse, such as hiring and firing, '[a]n employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm.'" *Redmon*, 80 F. Supp. 3d at 87 (quoting *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (alteration in original) (footnote omitted)). Here, Mr. Welch alleges that he suffered "adverse consequences such as anxiety, embarrassment from having urinated on himself, and emotional anguish." Opp'n to MSJ at 6. The allegations plainly do not rise to the level of an adverse employment action as none can be said to tangibly affect the terms, conditions, or privileges of Mr. Welch's current or future employment. Likewise, the denial of a timely break on one occasion does not alone constitute an adverse employment action. *Cf. Beckham v. Nat'l R.R. Passenger Corp.*, 736 F. Supp. 2d 130, 149 (D.D.C. 2010) ("Being denied the ability to work from home on, at most, three occasions is a minor annoyance, not an adverse action.").

Second, even if the denial of a timely break and the request that Mr. Welch confirm that he has received his scheduled breaks constituted adverse actions, Mr. Welch's claim still fails. Defendant has explained that Sgt. Powell neglected to provide Mr. Welch a timely break on March 9, 2015 because he had simply forgotten to relieve him of his post, as he had been distracted by other tasks. Welch Aff. at 3; Powell Dep. 45:2–10. Though Mr. Welch has provided some evidence that Sgt. Powell may have been less than truthful in explaining why he was distracted, *see* Email from Matthew Rogers (asserting that Sgt. Powell was "on the computer reading Msn Sport page" when he was supposed to relieve Mr. Welch for his scheduled break), ECF No. 25-3, Mr. Welch has provided no evidence from which a reasonable jury could infer that Sgt. Powell intentionally delayed giving Mr. Welch his break because of Mr. Welch's disability. Furthermore, Defendant has asserted that Sgt. Powell asked Mr. Welch to email to confirm that he had received his scheduled break because he was attempting to make sure that Mr. Welch was properly accommodated. Def.'s MSJ at 15. Mr. Welch has offered no evidence that might undermine this explanation. These are legitimate, nondiscriminatory explanations for Defendant's conduct. Because Plaintiff has failed to produce any evidence on which a reasonable jury might find that these explanations were pretext, Defendant is entitled to summary judgment on this claim.

### C. Retaliation

Next, Mr. Welch asserts that his supervisor retaliated against him for filing an administrative complaint regarding his delay in receiving his scheduled break on March 9, 2015. *See* Compl. at 5–7. Defendant contends that it is entitled to summary judgment because Mr. Welch has not alleged any materially adverse action and because, even if the actions alleged were materially adverse, Defendant has asserted legitimate, nonretaliatory reasons for each act.

Def.'s MSJ at 12–13, 14–15. While, viewed in the light most favorable to Mr. Welch, some of his allegations constitute materially adverse actions, Defendant is still entitled to summary judgment because Mr. Welch has failed to rebut Defendant's explanations for its actions.

"Where, as here, a plaintiff offers only circumstantial evidence of retaliation, [his] claim is governed by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–08 (1973)." *Solomon*, 763 F.3d at 14. Under that framework, a plaintiff must "first establish a prima facie case of retaliation by showing" that (i) he "engaged in statutorily protected activity," (ii) he "suffered a materially adverse action" by his employer, and (iii) a "causal link connects the two." *Id.* (citing *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009)). "Once a *prima facie* case is established, the burden of production shifts to the employer to produce 'a legitimate, non[retaliatory] reason' for its action." *Solomon*, 763 F.3d at 14. "If the employer does so, the plaintiff must respond with sufficient evidence to 'create[] a genuine dispute on the ultimate issue of retaliation either directly by [showing] that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (first and second alterations in original) (quoting *Pardo–Kronemann v. Donovan*, 601 F.3d 599, 604 (D.C. Cir. 2010)). Where an employer comes forward with a legitimate, non-retaliatory justification, the Court need only focus on whether the plaintiff has created a dispute on the ultimate issue of retaliation. *See id.* An employee may create such a dispute "either directly by showing that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jones*, 557 F.3d at 678 (brackets and internal quotation marks omitted) (quoting *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).

Mr. Welch contends that Defendant retaliated against him in two instances. Specifically, Mr. Welch asserts that Sgt. Powell singled him out, in front of other officers, during roll call on March 12, 2015. During the roll call incident, Sgt. Powell purportedly informed other officers that Mr. Welch had filed a complaint regarding his delayed break, and Sgt. Powell allegedly requested that Mr. Welch e-mail in the future to confirm that he had received his scheduled breaks. Mr. Welch also contends that, on March 23, 2015, Sgt. Powell retaliated against him by criticizing him regarding a door left open at the loading dock. *See* Compl. 5–8.

Drawing all reasonable inferences in Mr. Welch's favor, he has shown that he suffered a materially adverse action with regard to the March 12, 2015 roll call incident. However, Mr. Welch has not demonstrated that he suffered a materially adverse action with regard to the March 23, 2015 loading dock incident.

Retaliation "encompass[es] a broader sweep of [adverse] actions than those in a pure discrimination claim." *Baloch*, 550 F.3d at 1198 n.4. In the retaliation context, a "materially adverse" action is one that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). The D.C. Circuit has clarified that "job-related constructive criticism" does not constitute a materially adverse action unless it is accompanied by tangible harm, such as the potential that a negative performance review could affect an employee's position, grade level, salary, or promotion opportunities. *See Baloch*, 550 F.3d at 1199. By contrast, actions that "ostracize" an employee because of his decision to file EEO complaints can, under certain circumstances, suffice even if no tangible harm results. *See Mogenhan v. Napolitano*, 613 F.3d 1162, 1166 (D.C. Cir. 2010) (concluding that an employee's claims that her employer had posted her EEO complaint on an

intranet cite where other employees could and did access it and that her employer had increased her workload "to keep [her] too busy to file complaints" sufficed to show that she had been subjected to a material adverse action).

Here, viewing the evidence in the light most favorable to Mr. Welch, the March 12, 2015 incident qualifies as materially adverse. According to Mr. Welch, his supervisor "singled [him] out" by "inform[ing] all those . . . in attendance at [r]oll [c]all that [Mr. Welch] had filed a complaint" and by requesting, apparently in front of other officers, that Mr. Welch email to confirm that he received his scheduled breaks. Compl. at 5. A reasonable jury could believe that, by informing other officers that Mr. Welch had filed an EEO complaint and by broadcasting the requirement that Mr. Welch email to confirm that he received his scheduled breaks—a request not made of other officers—Mr. Welch's employer had taken actions that might dissuade an employee from making or supporting a charge of disability discrimination. The same cannot be said of Mr. Welch's contentions regarding the March 23, 2015 incident at the loading dock. Even viewing the evidence in the light most favorable to Mr. Welch, he has alleged only that he endured job-related criticism, and he has failed to tie that criticism to any tangible harm. Accordingly, while Mr. Welch has shown that the purported incidents on March 12, 2015 might constitute materially adverse actions, he has not demonstrated that the incident on March 23, 2015 qualifies as such.

In any event, Defendant is still entitled to summary judgment because it has offered legitimate, non-retaliatory explanations for each action and Mr. Welch has failed to create a dispute on the ultimate issue of retaliation. Regarding the March 12, 2015 incident, Defendant explains that, during roll call, Sgt. Powell asked Mr. Welch to email to confirm that he had received his breaks to ensure that there would be no further issues accommodating Mr. Welch.

*See* Def.'s MSJ at 15. Defendant also contends that Mr. Welch was only asked to send emails on one day to confirm that he had received his breaks. *See* Def.'s MSJ at 5. Thereafter, Sgt. Powell rescinded the request after learning from his supervisors that Sgt. Powell was to provide this information each day. *See* Def.'s MSJ at 5. Regarding the March 23, 2015 incident, Defendant explains that Sgt. Powell criticized Mr. Welch for the open door because Mr. Welch had not followed proper protocol for relieving a fellow officer and had, instead, left his assigned post unattended. *See* Def.'s MSJ at 6–7, 15. Sgt. Powell intended only to refresh Mr. Welch's memory regarding procedures for the loading dock doors and of his duties while assigned to the loading dock. Def.'s MSJ at 6–7. Mr. Welch fails to offer any evidence on which a reasonable jury could either conclude that a retaliatory reason more likely explained either action or that the Smithsonian's explanations are unworthy of credence. Accordingly, the Court enters summary judgment for Defendant on this claim.

### D. Hostile Work Environment

Finally, Mr. Welch contends that he was subjected to a hostile work environment, apparently based on the same conduct that formed the basis for Mr. Welch's retaliation and disability discrimination claims. *See* Compl. at 10. Defendant moves for summary judgment, asserting that the conduct of which Mr. Welch complains was not sufficiently severe or pervasive to create a hostile work environment. The Court agrees and grants Defendant's motion.

"To state a hostile work environment claim, a plaintiff must allege facts sufficient to show that the 'workplace is permeated with discriminatory intimation, ridicule, and insult' that is 'sufficiently severe or pervasive [as] to alter the conditions of the victim's employment and create an abusive working environment.'" *Buie v. Berrien*, 85 F. Supp. 3d 161, 180 (D.D.C.

2015) (alteration in original) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). "In determining whether an actionable hostile work environment claim exists, [courts] look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Buie*, 85 F. Supp. 3d at 180 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)). A hostile work environment claim cannot be based on "the ordinary tribulations of the workplace." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

The Court agrees with Defendant that Mr. Welch's claims fall well short of meeting this standard. First, the allegedly harassing conduct was infrequent, occurring only on a small number of occasions. Mr. Welch has not argued that the purportedly hostile environment extended beyond the incidents on March 9, 2015, when Mr. Welch belatedly received his scheduled break; on March 12, 2015 during roll call; and on March 23, 2015 at the loading dock. Second, Mr. Welch was in no way physically threatened by any of the alleged incidents. *See Faragher*, 524 U.S. 787–88 (explaining that a factor in assessing the hostility of a work environment is whether plaintiff was physically threatened). Third, Mr. Welch's claims appear to primarily involve work-related actions by supervisors, and courts have generally rejected such claims as sufficient to constitute a hostile work environment. *See Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011) (collecting case). Fourth, "in order to succeed on a hostile work environment claim, the behavior complained of must be 'so objectively offensive as to alter the conditions of the victim's employment.'" *Townsend v. United States*, 236 F. Supp. 3d 280, 312–13 (D.D.C. 2017) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998). None of the behavior Mr. Welch complains of is objectively offensive. For example,

while it is surely unfortunate that Mr. Welch purportedly urinated himself because of Sgt. Powell's forty-five minute delay in providing Mr. Welch's scheduled break, this does not show that Sgt. Powell's behavior was itself offensive. Mr. Welch does not allege—and certainly offers no evidence showing—that Sgt. Powell delayed in providing a timely break in an attempt to prompt such a response from Mr. Welch or to otherwise humiliate him. And no reasonable jury could infer such an intent on this record. In sum, even affording Mr. Welch all reasonable inferences, as this Court must, he has not provided facts sufficient to permit an inference that his employer's conduct created a hostile work environment. Accordingly, Defendant's motion for summary judgment is granted.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 24) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: March 22, 2018                                                RUDOLPH CONTRERAS
                                                                                            United States District Judge